RAILWAY EXPRESS AGENCY, INC.,
Appellant,

v.

James WARFIELD, Appellee.

RAILWAY EXPRESS AGENCY, INC.,
Appellant,

v.

Roy Glen BRYANT, Appellee.

RAILWAY EXPRESS AGENCY, INC.,
Appellant,

v.

Charles E. WARFIELD, suing by his next
friend and father, George War-
field, Appellee.

Court of Appeals of Kentucky.

Jan. 29, 1965.

H. M. Tye, Barbourville, for appellant.

Carlos B. Pope, Barbourville, for Charles Warfield.

Robert L. Milby, Hamm, Taylor & Milby, London, for R. G. Bryant and James Warfield.

PALMORE, Judge.

Railway Express Agency, Inc., appeals from a judgment entered pursuant to a jury verdict awarding recovery to the appellees Charles and James Warfield for personal injuries and to the appellee Roy Glen Bryant for property damage resulting from a collision between appellant's truck and Bryant's automobile.

The accident took place on U.S. 25E just south of Barbourville at about 7:00 A.M. on May 30, 1959. It was or had been raining and the highway was slick. The express company's driver, making a regular delivery run from Corbin, had completed a call at the depot in Barbourville and was proceeding southeasterly toward Pineville. James Warfield, 18 years of age, had borrowed the automobile of Bryant, his brother-in-law, for the purpose of going to a grocery store in Barbourville to buy cigarettes. His brother Charles, 16, went along

as a passenger. After making the cigarette purchase they decided to run out to a drive-in theater on the highway toward Pineville to see what was on that night. En route to this destination they came up behind the slower-moving express company truck and attempted to pass it. The left front bumper of the truck and right rear portion of the automobile came into contact, and the automobile went out of control and struck a post near the other side of the highway 100 to 150 feet beyond the point of collision.

A service station was located on the right side of the road at the point where the accident occurred. The Warfield boys testified that the truck slowed down and "leaned" to the right as if to enter the service station but cut back to the left while they were in the act of passing. No other traffic was involved in any way. The headlights of the automobile were burning (it was a dark and dreary morning), and the truck driver testified that through his rear view mirror he saw the automobile come out from behind him heading toward the left side of the highway, that he next noticed it veering back toward the cab of his truck, whereupon he immediately applied his brakes, turned away to his right and stopped within 10 feet, and that the automobile "waved around there a little bit and come into the left side of the left bumper * * * of the truck," etc. It was his version that the truck had come to a stop with its right wheels a foot or two onto the apron of the service station at the moment of impact. This was substantially corroborated by the only disinterested eyewitness, an attendant at the service station.

The evidence concerning the relative positions of the two vehicles with reference to the center line of the highway was in direct conflict. The Warfield boys said they were entirely in the left lane, never skidded, and never came over into the right lane. The truck driver said the car was straddling the center of the road when it came into contact with the truck. The service station man also said that the truck was on its right side of the road, though of course he was not in the most advantageous position to make such an observation. One witness, the local police chief, testified that he noticed a quantity of glass and debris in the right lane some 15 or 20 feet back from where the truck was stopped following the accident.

There was a conflict also as to whether the Warfields were attempting to pass on a yellow line, in a "no passing" zone. However, since no other traffic was approaching and the truck driver was aware of the move from behind,[1] a violation in this respect could not have had any proximate causal significance.

We are reluctant to extend this opinion by much further detailing of the evidence. Though as finders of fact we might have been inclined to decide the case the other way, it clearly was one for the jury. The debris in the road and the testimony of the disinterested eyewitness are not conclusive. In Ison v. Mullins, Ky., 336 S.W.2d 599 (1960), and Thornberry v. Smith, Ky., 346 S.W.2d 727 (1961), physical evidence was held conclusive against equivocal testimony to the contrary. Tire marks were vital in each instance, whereas the principal physical evidence in this case is the position of the debris, a less probative circumstance. But even if it be assumed that the automobile was partially to the right of the center line, that would not have been negligence per se, KRS 189.340 (1) requires the overtaking vehicle to pass to the left of the *vehicle being overtaken*. It does not necessarily mean that the overtaking vehicle must in any and all events be entirely across the center line while in

---

1. The driver's testimony that he saw the car come out from behind him probably renders insignificant any question as to the horn signal required by KRS 189.340

(1). However, both James Warfield and the service station attendant testified that the horn was sounded.

the act of passing. Ordinary care in that respect depends to a degree on the width of the road and the size of the vehicles. This two lane pavement was 20 feet and the express truck seven feet wide. KRS 189.350(1) requires the operator of the vehicle being overtaken to "give way to the right" insofar as he is reasonably able to do so. Subsection (2) of the same statute exacts from the operators and occupants of both vehicles the duty of such reciprocal assistance "as the circumstances reasonably demand." To make the center line of the highway an absolute criterion would destroy the effect of these wholesome provisions.

 There is not any reasonable basis for holding that James Warfield was negligent as a matter of law. Neither can we say that the testimony of the two boys showing negligence on the part of the truck driver was incredible. In Kentucky Transport Corporation v. Spurlock, Ky., 354 S.W. 2d 509 (1962), eyewitness testimony was found incapable of supporting belief because it categorically indicated that a car went off one side of the road in face of the indisputable fact that it went off the other side. In this case the boys testified that the truck cut back into them. It could have happened that way.

It follows that the trial court did not err in overruling the motions for directed verdict and for judgment n. o. v.

While Charles Warfield was waiting at a Barbourville funeral home to be taken by ambulance to the hospital in Corbin the police chief, at the behest of the truck driver, obtained from him a written statement to the effect that the car had skidded into the truck and the accident was "our fault." This statement was admitted into evidence, but the jury was admonished to consider it only for such impeaching effect as it might have on Charles's testimony. Appellant contends this was error, in that the statement should have been admitted as sub-

stantive testimony, being (1) the admission of a party and (2) part of the res gestae. However, not only was the statement admitted in evidence and made an exhibit, but there was a good deal of testimony about the circumstances under which it was taken and counsel for appellant freely alluded to it, without qualification, in both his opening and closing remarks to the jury. We cannot believe that the error, if any,[2] could have had any practical or prejudicial effect.

The judgment is affirmed.

---

2. We do not decide the question.